# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF ALABAMA

In re                                                                                       Case No. 14-33373-WRS
                                                                                                            Chapter 7

SHARON T. FULMER,

     Debtor

## MEMORANDUM DECISION

This bankruptcy case came before the Court for an evidentiary hearing on May 27, 2015, on Oliver Fulmer's objection (Doc. 26) to Sharon Fulmer's motion to convert her Chapter 7 bankruptcy case to a case under Chapter 13. (Doc. 21). For the reasons set forth below, Oliver Fulmer's objection is OVERRULED and Sharon Fulmer's motion to convert is GRANTED.

### I. BACKGROUND PROCEEDINGS

The Court will divide its discussion into four parts. In this Part, the Court will discuss the divorce agreement and bankruptcy proceedings that led to this dispute. In Part II, the Court will discuss the applicable law and the burden of proof. In Part III, the Court will analyze Oliver Fulmer's written objection and the evidence presented at the May 27 hearing in light of the applicable law. In Part IV, the Court will announce its legal conclusion and order.

#### A. The Divorce Proceedings

The Fulmers were divorced on August 13, 2012.[1] The Divorce Decree incorporated a Marital Settlement Agreement. (Oliver Exhibit 1). The Agreement provided for the division of the Fulmers' property; however, it curiously did not dispose of one of their most valuable (and

---

[1] The Fulmers were divorced in proceedings styled <u>Oliver Randall Fulmer v. Sharon Towns Fulmer</u>, Case No. DR-2012-900223.00, in the Circuit Court of Elmore County, Alabama.

troublesome) assets, a 2002 Fourwinds Fun Mover RV that is encumbered by an indebtedness to USAA, on which both of them are liable.

The parties entered into a Modification Agreement on August 26, 2014. (Oliver Exhibit 4). In general terms, the Modification Agreement provides that the parties are to split the costs of maintaining the RV and paying the indebtedness until the RV can be sold. Paragraph 5 of the Modification Agreement provides, in part, that "[t]he parties shall continue to cooperate towards the mutual goal of selling the RV in order to pay off the loan. The selling price of the RV shall be the amount necessary to pay off the loan on the RV."

This provision demonstrates the naivete of the parties and shows why there has been so much unnecessary discord. The amount of the debt owed to USAA has nothing to do with the sales price of the RV. To state what should be obvious to all, and which seems to have escaped not only the parties but their lawyers as well, the fact that the parties have not been able to sell the RV, for the amount owed to USAA, for 3 years or more means that it is not worth as much as the debt owed against it. That the parties have failed to grasp this simple but important fact is the cause of all the discord here.

### B. The Bankruptcy Proceedings

Sharon filed a petition in bankruptcy pursuant to Chapter 7 of the Bankruptcy Code on December 16, 2014. (Doc. 1). On March 4, 2015, Oliver filed a complaint, seeking a determination that Sharon's obligation under the Modification Agreement to hold him harmless for her half of the RV debt should be excepted from discharge pursuant to 11 U.S.C. §

523(a)(15).[2] (Adv. Pro. 15-3015, Doc. 1). Two days later, on March 6, 2015, Sharon moved to convert her Chapter 7 proceeding to a case under Chapter 13. (Doc. 21). Given the timing of Sharon's motion, the Court infers that her purpose in moving to convert her case is to discharge her indebtedness to her former husband.[3] Oliver filed an objection contending that Sharon's motion to convert is filed in bad faith. (Docs. 26, 28).

## II. LAW

### A. Jurisdiction

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(a) and 157(a), and the District Court's General Order of Reference dated April 25, 1985. Venue is proper under 28 U.S.C. § 1408(1). This is a core proceeding. 28 U.S.C. § 157(b)(2)(A). This is a final order.

---

[2] Section 523(a)(15) excepts from discharge in Chapter 7 debts that arise from a division of property in a divorce decree. However, such debts are dischargeable in Chapter 13. Steele v. Heard, 487 B.R. 302, 308 (S.D. Ala. 2013); Saggus v. Saggus (In re Saggus), 528 B.R. 452, 457 (Bankr. M.D. Ala. 2015); Coon v. Henderson (In re Coon), 522 B.R. 357, 363-64 (Bankr. M.D. Ala. 2014); Smith v. Smith (In re Smith), Adv. No. 13-2027, 2013 WL 6199148, *2 (Bankr. N.D. Ga. Oct. 3, 2013).

[3] Oliver's lawyer stated at the May 27, 2015 hearing that if Sharon's bankruptcy case is converted to a case under Chapter 13, he may amend his complaint and take the position that amounts owed him by Sharon are in the nature of alimony and hence nondischargeable pursuant to 11 U.S.C. §§ 523(a)(5) and 1328(a)(2). This decision is not determinative of that question in the event Oliver amends his complaint.

3

### B. Conversion

#### 1. Section 706(a) and *Marrama*

Section 706(a) of the Bankruptcy Code provides that "[t]he debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1208, or 1307 of this title. Any waiver of the right to convert a case under this subsection is unenforceable." The Supreme Court held, in Marrama v. Citizens Bank of Mass., 549 U.S. 365, 127 S. Ct. 1105 (2007), that a Bankruptcy Court may deny a debtor's motion to convert if it finds that the debtor has acted in bad faith. Prior to the time Marrama was handed down, some bankruptcy courts had held that § 706(a) provided that the debtor had an unconditional right to convert.

The debtor in Marrama fraudulently transferred a house seven months before he filed a petition in bankruptcy pursuant to Chapter 7, failing to disclose the transfer in his schedules. The Chapter 7 Trustee discovered Marrama's ruse and stated that he would take action to recover the property. In response, Marrama moved to convert his case to a case under Chapter 13. The Bankruptcy Court denied the motion and the Supreme Court ultimately held that a Bankruptcy Court may, in its discretion, deny a debtor's motion to convert upon a finding that the motion was filed in bad faith. This power flows from "the inherent power of every federal court to sanction 'abusive litigation practices.'" Marrama, 549 U.S. at 376, 127 S. Ct. at 1112.

The questions becomes: What is "bad faith" such that a bankruptcy court should deny a motion to convert? The Supreme Court stated in Marrama that:

> We have no occasion here to articulate with precision what conduct qualifies as "bad fath" sufficient to permit a bankruptcy judge to dismiss a Chapter 13 case or to deny conversion from Chapter 7. It suffices to emphasize that the debtor's conduct must, in fact, be atypical. Limiting dismissal or denial of conversion to extraordinary cases is particularly appropriate in light of the fact that lack of good faith in proposing a Chapter 13 plan is an express statutory ground for denying plan confirmation. 11 U.S.C. § 1325(a)(3); see In re Love, 957 F.2d, at 1356 ("Because dismissal is harsh . . . the bankruptcy court should be more reluctant to dismiss a petition . . . for lack of good faith than to reject a plan for lack of good faith under Section 1325(a)").

Marrama, 549 U.S. at 375 n.11, 127 S. Ct. 1105, 1112.

In a case handed down by the Bankruptcy Court in the Middle District of Florida shortly after the Supreme Court decided Marrama, conversion was denied after a finding that the debtors acted in bad faith when they converted nonexempt property into exempt property and failed to make accurate disclosures. See In re Mercado, 376 B.R. 340 (Bankr. M.D. Fla. 2007). In another case from the Southern District of Florida, a Chapter 7 Trustee moved to vacate a Chapter 7 discharge after he learned that the debtor had concealed valuable jewelry. See In re Alvarez, No. 10-45709, 2011 WL 5593176 (Bankr. S.D. Fla. Oct. 25, 2011). In response, the debtor moved to convert the case to a case under Chapter 13. The court in Alvarez denied the debtor's motion to convert, finding that the debtor had made misleading statements in an effort to defraud creditors. Mercado and Alvarez provide useful examples of the kind of conduct that will result in the denial of a motion to convert. The Court is looking for proof of a materially false statement made with the purpose of defrauding creditors.

5

## 2. The Burden of Proof

It is well established that when a debtor seeks to confirm her Chapter 13 Plan, the burden is on her to prove her good faith. 11 U.S.C. § 1325(a)(3); In re Smith, 328 B.R. 797, 801 (Bankr. W.D. Mo. 2005) (holding that while the creditor has the initial burden to produce some evidence of lack of good faith, the ultimate burden is on the debtor to prove his good faith); see also In re Kearney, 439 B.R. 694, 697-98 (Bankr. E.D. Wis. 2010); In re Delbrugge, 347 B.R. 536, 540 (Bankr. N.D. W. Va. 2006); In re Maronde, 332 B.R. 593, 597 (Bankr. D. Minn. 2005). However, when a creditor seeks to forestall access to Chapter 13 relief as a threshold matter, and not as an objection to confirmation of a plan, the burden is on the creditor to prove the debtor's bad faith with a preponderance of the evidence. In re Goines, 397 B.R. 26, 32 (Bankr. M.D.N.C. 2007); see also In re Jennings, No. 12-32615, 2013 WL 1137052, *4 (Bankr. W.D.N.C. Mar. 19, 2013); In re Nelson, No. 13-32469, 2014 WL 1884323, *4 (Bankr. W.D.N.C. May 12, 2014). Thus, the burden of proof here is on Oliver to (1) make a sufficient allegation of bad faith and (2) produce sufficient credible evidence supporting his allegation to meet the preponderance standard.

## III. ANALYSIS

Oliver's objection to Sharon's motion to convert is 31 pages long, including 83 numbered rhetorical paragraphs followed by a memorandum of law. (Doc. 28). The objection is prolix, rambling, and confused. Oliver's argument may fairly be summarized in three points, which cover the substance of his objection: (1) that Sharon acted in bad faith with respect to Oliver

6

concerning the RV; (2) that Sharon's motivation to convert is in bad faith; and (3) that Sharon's statements and schedules are inaccurate and fraudulent.

### A. The RV

Having heard the evidence, the Court is convinced that the discord between the parties centers on the now despised RV. As stated in Part I(A) above, the Marital Settlement Agreement made no mention of the RV and its disposition. The Modification Agreement purports to cure that deficiency and make provision for the disposition of the RV. However, the Modification Agreement is inherently unworkable. That the parties would agree to an order decreeing that "[t]he selling price of the RV shall be the amount necessary to pay off the loan on the RV," is ample evidence of how poorly the divorce has been handled to date. It should stand without saying that no prospective purchaser will be bound by the Modification Agreement. An unrelated purchaser, acting at arm's length, will offer no more than market value for the RV. Three years of experience demonstrates that the market value of the RV is something less than the amount of the indebtedness owed to USAA and is depreciating faster than the indebtedness is being paid off, leaving the parties like two parched travelers in the desert walking towards a mirage that they can never reach. Sharon's desire to rid herself of this albatross is not bad faith.

Oliver complains that Sharon increased his financial exposure when she evicted a renter out of the RV who, he claims, was paying rent that would have defrayed expenses. Sharon disputed Oliver's testimony, providing an alternative version of the facts. Neither party offered any evidence other then their own unsubstantiated word. Having heard the testimony of the

7

parties, the Court finds that Oliver has failed to prove that Sharon dealt with him in bad faith with respect to the RV.

### B. Sharon's Motivation in Converting

The predominant motivation for Sharon's conversion of her case to Chapter 13 appears to be to discharge her obligation to Oliver. Even so, this by itself is insufficient as a matter of law to supply the necessary proof of bad faith so as to preclude conversion. If Sharon can seek discharge of her RV debt in good faith, she logically can also seek to discharge her obligation to Oliver in good faith. Sharon's fresh start from discharging the debt to USAA would not be very fresh if she still has to hold Oliver harmless for half of it.

Congress has determined that some debts that will not discharge in a case under Chapter 7 may nevertheless be discharged in a case under Chapter 13. A debt subject to § 523(a)(15) is one such debt. Supra note 2. A debtor, such as Sharon, who lawfully seeks a discharge in bankruptcy is not, by definition, acting in bad faith. See Hardin v. Caldwell (In re Caldwell), 895 F.2d 1123, 1127 (6th Cir. 1990) (stating that "[i]t is not conclusively bad faith for a debtor to seek to discharge a debt incurred through his own criminal or tortious conduct, but that factor may be considered"); In re Griggs, 181 B.R. 111, 115 (Bankr. N.D. Ala. 1994) (holding that a debtor was not acting in bad faith when he converted a case under Chapter 7 to a case under Chapter 13 for the purpose of discharging a debt for fraud, but it was a fact which could be considered).[4] It is incumbent upon Oliver to offer evidence in support of this claim.

---

[4] At the time Griggs was handed down, debts which were nondischargeable in Chapter 7 cases pursuant to 11 U.S.C. § 523(a)(2) were then dischargeable in cases under Chapter 13. Since that time, § 1328(a) has been amended to include an exception for § 523(a)(2).

In his objection, Oliver complains that Sharon's Chapter 13 Plan proposes only a zero percent payment to the holders of unsecured claims, yet Sharon had previously reaffirmed a $7,000 debt on a motorcycle. (Doc. 19). The Chapter 13 Trustee and any party in interest, including Oliver, may object to the Plan if it does not comply with the provisions of the Bankruptcy Code. A zero percent plan is not per se bad faith and the Court does not find that Sharon is guilty of bad faith here.[5] As for the motorcycle, Sharon testified that the same creditor is secured by both the motorcycle and her primary vehicle, and that she had to reaffirm the debt on the motorcycle in order to reaffirm the debt on her primary vehicle. Converting to Chapter 13 would allow Sharon to exercise a "cramdown" on the debt on her primary vehicle while discharging the debt on the motorcycle.[6] Having considered Sharon's financial condition and her testimony, the Court finds that she has acted in good faith in moving to convert her case to a case under Chapter 13.

### C. The Accuracy of the Statements and Schedules

Oliver argues that Sharon's statements and schedules are, in many ways, inaccurate and perhaps even fraudulent. It is incumbent upon Oliver to demonstrate that Sharon's filings are inaccurate in some material way. That is, he may not simply point out a representation that he

---

[5] To be sure, a low percentage payout to creditors may be one factor, from which – together with other evidence – the Court may infer bad faith. However, a low percentage plan, by itself, is not necessarily bad faith.

[6] Section 1325(a)(5)(B) permits a Chapter 13 debtor, with certain exceptions, to keep her collateral over the creditor's objection while paying the secured claim (adjusted to the replacement value of the collateral) through her plan. Assocs. Commercial Corp. v. Rash, 520 U.S. 953, 957, 117 S. Ct. 1879, 1882-83 (1997). This is known as a "cramdown."

feels is inaccurate – he must also prove it is so. Taken as a whole, Oliver's claims of misrepresentations fail for three distinct reasons. First, in some instances, the alleged misrepresentation is not in fact a misrepresentation. Second, many of Oliver's alleged misrepresentations are immaterial – consisting of nothing more than petty knit-picking. Third, in those instances where a valid claim of misrepresentation is made, he fails to deliver proof.

An example of the first kind is at Paragraph 50 of Oliver's objection, where he states as follows:

> The Debtor did not list Mr. Fulmer's payments to USAA for the RV nor his part of the insurance premium on Schedule I of her Petition, even though paragraph 8(c) of Schedule I calls for a debtor to list family support payments regularly received to "(i)nclude alimony, spousal support, child support, maintenance, divorce settlement and property settlement."

(Doc. 28, p. 12). Paragraph 8 of Schedule I calls for the debtor to "[l]ist all other income regularly received." Sharon does not receive Oliver's payments to USAA. Payments made by Oliver on a debt owed by him to a third party is in no way, shape, or form the kind of thing which should be listed in Schedule I as income to Sharon. To be sure, Sharon is jointly liable on the debt. Either party benefits any time the other pays USAA. As Sharon proposes to abandon her interest in the RV and discharge her debt to USAA, Oliver's payments are not income to Sharon. Oliver's claim, that Sharon's Schedule I is incorrect, is without merit. Contrary to his claim, there is no misrepresentation.

An example of the second kind may be found in Paragraph 56 of Oliver's objection, where he states:

10

> In her Statements of Financial Affairs accompanying both the
> Debtor's chapter 7 petition and the proposed chapter 13 petition,
> Sharon Fulmer has correctly numbered the Elmore County
> contempt proceeding as DR2012-900223.01, but incorrectly
> labeled that case as a "Divorce Modification" from the "District
> (sic) Court of Elmore County" instead of correctly labeling the
> action as one alleging Contempt in the Elmore County Circuit
> Court and improperly referred to the disposition as "ceased,"
> instead of properly indicating that the case was "settled."

(Doc. 28, p. 14). Oliver would have Sharon run out of Bankruptcy Court because she stated "ceased" instead of "settled" and because she stated the Elmore County District Court rather than the Elmore County Circuit Court. This is the worst kind of knit-picking.

An example of the third kind may be found in Paragraphs 58 and 59 of the objection, where Oliver lists property that was awarded to Sharon in the Divorce, but is not reflected in her schedules. If Sharon in fact owned a $30,000 motorcycle or a $5,000 zero-turn lawn mower that was not listed in the schedules, then Sharon would be guilty of a material misrepresentation which could well result in the denial of her motion to convert. However, Oliver provides nothing more than a bare allegation. Sharon claimed in her response that the items were sold shortly after the divorce and that they did not have to be listed as property owned, or as property sold within the past two years.[7] Oliver might have presented evidence that Sharon still owns the property, such as a picture of the items in her yard, or the testimony of a witness. Or, Oliver might have offered evidence of a sale within the two-year look back period of Question No. 10, but he did not do that either.

---

[7] Question Number 10 in the Statement of Financial Affairs calls for the Debtor to list property sold, not within the ordinary course of business, within the two years prior to the date of the petition.

11

Case 14-33373    Doc 40    Filed 07/08/15    Entered 07/08/15 08:29:35    Desc Main
Document      Page 11 of 13

All of Oliver's objections suffer from one of these three deficiencies. On April 17, 2015, Sharon filed a point-by-point response to Oliver's many accusations of false representations. (Doc. 32). Having heard the testimony and having considered the evidence, the Court accepts Sharon's point-by-point refutation. The Court need not, and will not, address the remainder of the 83 numbered paragraphs of Oliver's objection. The vast majority of the numbered objections are either facially without merit or pointless knit-picking. To the extent that Oliver may have made any facially valid objections in his written filing, he failed to support them with any credible evidence at the May 27 hearing. Having considered the statements and schedules filed by Sharon in this case, the Court finds that they are not false in any material respect. Oliver's claim that Sharon has acted in bad faith is without merit.

## IV. CONCLUSION

Oliver Fulmer objected to Sharon Fulmer's motion to convert her Chapter 7 bankruptcy case to one under Chapter 13, alleging that she is acting in bad faith. Having heard the evidence, the Court concludes that Oliver has failed to prove that Sharon is guilty of bad faith. Many of the allegations in Oliver's objection are nothing more than knit-picking, others are vague or simply incorrect either factually or legally, and still others are unsupported by evidence. Therefore,

12

Oliver's objection is overruled. Sharon Fulmer's motion to convert her case to one under Chapter 13 will be granted by way of a separate order.

Done this 7th day of July, 2015.

/s/ William R. Sawyer

United States Bankruptcy Judge

c: Mary Conner Pool, Attorney for Debtor
Kammie B. Lee, Attorney for Oliver Randall Fulmer
Daniel G. Hamm, Trustee